IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VINCE COOK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06-CV-954-JPG |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant United Parcel Service's ("UPS") motion to dismiss Count II of plaintiff Vince Cook's ("Cook") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 13). Cook has responded to the motion (Doc. 16). Count II of Cook's complaint alleges that UPS's policy manual ("Policy Book") amounted to an enforceable employment contract and that UPS breached that contract when it terminated Cook as an employee.

**I.      Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the plaintiff. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005); *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000). The Court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff cannot prove his claim under any set of facts consistent with the complaint. *Brown*, 398 F.3d at 908-09; *Holman*, 211 F.3d at 405.

As a preliminary matter, the defendant's motion to dismiss refers to matters outside the pleading, namely, the Policy Book. Ordinarily, when such materials outside the pleading are presented in connection with a Rule 12(b)(6) motion to dismiss, the Court may not consider the

material unless it converts the motion to dismiss into a motion for summary judgment and gives the parties fair warning that it is doing so and an opportunity to respond. However, there is an exception to this general rule where the attached material is expressly referenced in the complaint and is central to the plaintiff's claim. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). That is what has occurred in this case. Cook references the Policy Book in Count II, although not by its exact name, and that document is clearly central to his breach of contract claim. Therefore, the Court may consider the Policy Book in ruling on UPS's motion to dismiss.

## II.     Alleged Facts

Cook began working for UPS in 1981. In 2004, he was a business manager under the supervision of Barbara Callaghan ("Callaghan"). Part of Cook's job was to fill out time cards every day for the employees he supervised. In late 2004, he filled out the time cards according to Callaghan's instructions and was then fired because he did not fill them out correctly. UPS did not make a finding that there was just cause for Cook's termination or issue Cook lesser discipline prior to firing him.

At all relevant times, UPS was using a Policy Book it had distributed to Cook and other employees. Immediately following the table of contents for the Policy Book was the following sentence in bold typeface: "The Policy Book is not a contract of employment and does not affect your rights as an employee of UPS." Policy Book at iii. Later the Policy Book states, "The Policy Book is not a 'how-to-do-it' manual or employment contract." *Id.* at 12. The Policy

Book also contained the following provisions:

> **We Promote an Open Door Approach to Managing People.**  Every person should feel free to discuss matters with management people in our company. . . .[1]
>
> **We Give Each Employee Complaint Prompt, Sincere Attention.**  If overlooked or neglected, even minor misunderstandings can escalate into major dissatisfactions.
>
> We try to anticipate and eliminate causes of complaints.  When a question exists, we give the employee the benefit of the doubt.  The immediate supervisor has the initial responsibility for resolving a complaint.  When necessary, we involve the next level of management and, if appropriate, the Human Resources manager.
>
> We keep the employee informed about the status of his or her complaint.  In the process of making a decision, we do our best to take action that is fair to both the employee and the company.

Policy Book at 20.

Cook filed this lawsuit alleging that the Policy Book amounted to an employment contract promising him that he would not be fired without just cause and that his termination breached that promise.  UPS denies that the Policy Book is an enforceable contract.

**III.   Analysis**

The Policy Book is not a contract promising Cook that he would not be fired without just cause.  It is true that under Illinois law, which all parties agree governs this case, an employee handbook can amount to an enforceable employment contract.  *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987).  In *Duldulao*, the Illinois Supreme Court recognized the general rule of at-will employment, that is, "that an employment relationship without a fixed

---

[1] Cook misquotes this provision of the Policy Book to contain a right to discuss matters with UPS management, not just encouragement to do so.

duration is terminable at will by either party." *Id.* at 317. It held, however, that parties may enter into contracts that overcome the presumption of at-will employment and that such contracts may be formed by an employee handbook or policy manual. *Id*. at 318. Resolving conflicts among Illinois appellate courts and federal courts applying Illinois law on the topic,[2] the *Duldulao* court held that

>an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed.

*Id.*

In *Duldulao*, the Illinois Supreme Court considered the following language in an employee handbook: "termination . . . cannot occur without proper notice and investigation," "[employees] are never dismissed without prior written admonitions," and "three warning notices . . . are required before an employee is dismissed." *Id.* The Court found that such language was a clear offer that an employer would use progressive discipline before terminating an employee. *Id.* at 318-19. In light of the absence of any language negating such a promise, the

---

[2]*Duldulao* superseded the earlier-decided cases cited by Cook in his brief: *Kaiser v. Dixon*, 468 N.E.2d 822 (Ill. App. Ct. 1984); *Pelizza v. Reader's Digest Sales & Servs., Inc.*, 624 F. Supp. 806 (N.D. Ill. 1985); *Carter v. Kaskaskia Cmty. Action Agency*, 322 N.E.2d 574 (Ill. App. Ct. 1974). *See Duldulao*, 505 N.E.2d at 317 (acknowledging split among courts and announcing definitive rule).

Court found that the employee handbook at issue would lead a reasonable employee to believe she would not be fired without progressive discipline. *Id.* at 319. The employer's distribution of the employee handbook to its employees, and its employees' continuing to work there knowing the terms of the employee handbook rendered it enforceable as an employment contract. *Id.*

Cook's case stumbles on the first requirement of *Duldulao* – that the policy statement contain a clear promise that would lead a reasonable employee to believe an offer to be terminable only for just cause has been made. In considering whether an offer in an employee handbook is sufficiently definite and clear, the Court can consider things such as mandatory language in the policy statement, *see id.* at 318 (emphasising the words "cannot occur," "are never" and "are required"), and whether specific procedures are prescribed by "positive and mandatory language," *Doe v. First Nat'l Bank of Chicago*, 865 F.2d 864, 872 (7th Cir. 1989). The Court can also consider disclaimers in the policy statement that tend to negate any promises. *See Duldulao*, 505 N.E.2d at 319; *Doe*, 865 F.2d at 873.

In this case, nothing in the Policy Book would lead a reasonable employee to believe he was terminable only for just cause. The language set forth in the prior section of this order does not even approach the strength of the language found in *Duldulao* to constitute a clear and definite offer. In fact, neither it nor any other section of the Policy Book contains any reference to employee discipline or termination, much less a promise that certain procedures would be followed or certain standards would be met. Instead, the quoted language simply encourages employees to approach managers if they have concerns or complaints and expresses UPS's willingness to follow up on employee complaints. Furthermore, the Policy Book contains two

disclaimers warning employees that UPS does not intend the Policy Book to constitute an employment contract, one of which is in bold typeface placed prominently at the beginning of the book.  No reasonable employee could possibly believe that by issuing the Policy Book UPS was promising not to fire an employee unless there was just cause.  For this reason, as a matter of law the Policy Book cannot amount to an enforceable employment contract not to fire Cook without just cause, and the Court must dismiss Count II of this case.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** UPS's motion to dismiss Count II (Doc. 13), **DISMISSES** Count II **with prejudice**, and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**Date:  April 30, 2007**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**